**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-00380-NYW

D.C.,[1]

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2]

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision made by the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by D.C. ("Plaintiff or "D.C."). After carefully considering the Parties' briefing, the Administrative Record, and the applicable case law, this court respectfully **REVERSES** and **REMANDS** the Commissioner's decision.[3]

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this court refers to Plaintiff using her initials only.

[2] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[3] This civil action was originally assigned to the Honorable Robert E. Blackburn on February 8, 2021, [Doc. 2], and later reassigned to the Honorable Raymond P. Moore on October 4, 2021, [Doc. 19]. On August 4, 2022, this action was reassigned a final time to the undersigned upon her appointment as United States District Judge. [Doc. 20].

## BACKGROUND

Plaintiff, born October 3, 1958, filed an application for DIB on February 15, 2011, alleging she became disabled on June 16, 2009.  [Doc. 13-5 at 246].[4]  Plaintiff later amended her alleged onset date to June 17, 2010.  [Doc. 13-4 at 200].  Plaintiff claims she could not work due to several medical conditions, including, *inter alia*, plantar fasciitis, vertigo, headaches, depression, and anxiety.  [Doc. 13-4 at 202–06].  The Social Security Administration denied Plaintiff's claim on March 30, 2011.  [*Id.* at 185–87].

This is Plaintiff's third appeal to this Court.  *See* [Doc. 1 at 2–3; Doc. 14 at 4].  Plaintiff filed her first appeal with this Court on December 9, 2013.  *See* [ECF No. 1], *Contreras v. Colvin v. Colvin*, No. 13-cv-03310-KMT (D. Colo. Dec. 9, 2013).  After full briefing, the Court remanded the matter in an order dated March 30, 2015, on the basis that the Administrative Law Judge ("ALJ") did not properly evaluate an opinion, and because Plaintiff submitted new evidence to the Appeals Council.  *See* [Doc. 13-9 at 790–805].

 On remand, Plaintiff's claim was again denied by an ALJ on February 2, 2016.  [*Id.* at 812–37].  On July 28, 2017, the Appeals Council remanded the case so the ALJ could consider additional opinions of one of Plaintiff's medical providers.  [*Id.* at 838–41].  On June 26, 2018, the same ALJ issued a new decision again denying Plaintiff's claim.  [Doc. 13-16 at 2016–34].  Plaintiff then filed a second civil action, *Contreras v. Saul*, No. 19-cv-01180-REB (D. Colo. 2019).  *See* [Doc. 14 at 4].  Following the Commissioner's voluntary request for remand, [Doc. 13-16 at 2046–49], on January 10, 2020, the Appeals Council remanded the matter and directed the ALJ

---

[4] When citing to the Administrative Record, the Court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents the court cites to the document and page number generated by the CM/ECF system.

to, *inter alia*, further evaluate Plaintiff's mental impairments, alleged symptoms, and residual functional capacity during the relevant period.  [*Id.* at 2053–55].

ALJ Kurt Schuman presided over a telephonic hearing on September 8, 2020, during which he heard testimony from Plaintiff, Medical Expert Michael Enright, PhD, and Vocational Expert ("VE") Dennis Duffin.  *See* [Doc. 13-15 at 1971-73].  At the hearing, Plaintiff testified she became disabled as of June 17, 2010, and was unable to work due to experiencing "a lot of pain," having to "rest a lot and lay down," headaches, depression, stress, "a lot of anxiety," and no longer being able to do physical activities.  [*Id.* at 1982–83].  She explained that the pain she experiences is throughout her body, especially in her legs, feet, and her head.  [*Id.* at 1983].  Plaintiff also testified that, prior to March 31, 2011, she could dress herself, drive, go out, prepare meals with the help of her husband, and shop for groceries, clothes, and furniture.  [*Id.* at 1986–87, 1993–94].  Further, Plaintiff testified that she began experiencing vertigo around September 2009, but the condition "really hit [her] hard" in March 2010.  [*Id.* at 1992–93, 1995].  Following Plaintiff's testimony, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC").  [*Id.* at 2008–10].  In response, the VE identified three representative occupations: (1) cashier II, with approximately 810,000 jobs nationally and 12,700 in Colorado; (2) attendant-self service store, with approximately 212,000 jobs nationally and 3,400 in Colorado; and (3) assembler-small products, with approximately 25,000 jobs nationally and 500 in Colorado.  [*Id.* at 2010–11].

On September 25, 2020, the ALJ issued a decision denying Plaintiff's claim.  [*Id.* at 1943–57].  The ALJ determined Plaintiff met the insured status requirements of the Act through March 31, 2011, and had not engaged in substantial gainful employment since June 16, 2009.  [*Id.* at 1948–49].  At Step Two, the ALJ found that Plaintiff had the following severe impairments: plantar

fasciitis and obesity. [*Id*. at 1949]. The ALJ also noted references in the record to "GERD, hypertension, obstructive sleep apnea, left knee arthritic changes, bilateral hip osteoarthritis, diverticulosis, large gallstone, small hiatal hernia, fatty liver, bulky uterus, diabetes mellitus, congestive heart failure, vertigo, and benign neoplasm of pituitary gland." [*Id*.]. However, the ALJ found that these conditions did not cause "significant, ongoing work-related functional limitations during the period from the amended alleged onset date [June 17, 2010] through the date last insured." [*Id*.]. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in the Regulations. [*Id*. at 1951]. At Step Four, the ALJ concluded Plaintiff has the residual functional capacity ("RFC") to perform a range of light work, with the following limitations:

> [Plaintiff] was able to lift up to 20 pounds occasionally, and was able to lift and carry 10 pounds frequently, but was only able to stand or walk for approximately 4 hours per 8-hour workday, with normal breaks. She would have also required a sit-stand option; that is, she required the option to sit or stand alternatively, at will, in order to accommodate her need to change from a standing position to a sitting position, or vice versa, approximately 1 to 2 times an hour, provided she was not off task more than 5 percent of the work period. She must never have been required to climb ladders, ropes, or scaffolds. She was able to occasionally climb ramps and stairs, balance stoop, crouch, kneel, and crawl. She was further limited in that she must have avoided frequent exposure to excessive heat and excessive cold, and must have avoided occasional exposure to excessive vibration, and occasional exposure to irritants such as fumes, odors, dust, and gases, as well as poorly ventilated areas. She must have avoided all use of moving and/or dangerous machinery, and she must have avoided all exposure to unprotected heights. She must also have avoided concentrated exposure to excessive noise.

[*Id*. at 1951–52]. Finally, at Step Five, the ALJ found that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." [*Id*. at 1956].

Plaintiff filed a Notice of Exceptions regarding the ALJ's decision on October 9, 2020, [Doc. 13-17 at 2214–20], which the Appeals Council denied on January 22, 2021, [Doc. 13-15 at 1936–41]. Plaintiff sought judicial review of the Commissioner's final decision in the United

States District Court for the District of Colorado on February 8, 2021, invoking this Court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. §405(g) in this action. *See* [Doc. 1]. Because this matter is ripe for consideration, I consider the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and has a disability as defined in the Act. 42 U.S.C. § 423(a)(1). The claimant must prove she was disabled prior to last date insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). Under the Act, an individual is disabled

> only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A). The disability must last or be expected to last for at least 12 months. *Id.* at § 423(d)(1)(A). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. *Id.* at § 423(d)(2)(B).

Under the Act, there is a five-step evaluation process to determine whether a claimant is disabled:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5.  Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing five steps in detail).  "The claimant bears the burden of proof through [S]tep [F]our of the analysis[,]" and the Commissioner bears the burden of proof at Step Five.  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  If an ALJ determines "at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's decision, the Court limits its review to considering whether the ALJ's findings are supported by substantial evidence and if they applied the correct legal standards.  *Flaherty*, 515 F.3d at 1070.  The Court may not reweigh evidence nor substitute its judgement for the Commissioner's, but failure to apply proper legal standards may be sufficient grounds for reversal independent of substantial evidence analysis.  *See Hendron v. Colvin*, 767 F.3d 951 (10th Cir. 2014).  Substantial evidence is more than a "mere scintilla" and is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.  *Flaherty*, 515 F.3d at 1070.  Evidence is not substantial if it is overwhelmed by the record or is only a conclusion.  *Williams*, 844 F.2d at 750.  The court may not replace the Commissioner's decision between two plausible and conflicting views, even if the court would find differently in a *de novo* review.  *Lax*, 489 F.3d at 1084.  However, a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

## ANALYSIS

Plaintiff identifies three overall issues in the ALJ's decision which she argues warrant remand. *See* [Doc. 14 at 6–7]. First, Plaintiff challenges the ALJ's findings at Step Four, arguing that the ALJ failed to base his findings regarding Plaintiff's RFC in substantial evidence when he gave "little" or "limited" weight to the opinions of an agency physician and Plaintiff's treating providers. [*Id.* at 6, 24–32]. Second, Plaintiff argues that the ALJ failed to base his findings regarding the consistency of Plaintiff's testimony regarding her symptoms in substantial evidence. [*Id.* at 6, 33–34]. Third, Plaintiff contends that the ALJ failed to follow Social Security Ruling 83-12 in finding that Plaintiff was not disabled at Step Five. [*Id.* at 6, 34–37]. The Commissioner disagrees with Plaintiff, insisting that substantial evidence supports the ALJ's decision, and the ALJ properly considered the evidence. [Doc. 17 at 1]. The Court will address each challenge in turn.

I.    **Plaintiff's First Challenge: Whether the ALJ Erred at Step Four in His Evaluation of Plaintiff's RFC When He Gave "Little Weight" to the Opinions of Plaintiff's Treating Providers and "Limited Weight" to the Opinion of a Non-Treating Medical Consultant.**

A.    **Legal Standard**

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. *See* 20 C.F.R. § 404.1545; SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). "'The RFC assessment must include a narrative discussion describing how the evidence that supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron*, 767 F.3d at 954 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2,

1996) ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")).   The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence.  *Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015).  For applications filed prior to March 27, 2017, the Social Security regulations afford a treating source opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *cf. Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016) ("The distinction between *not inconsistent* and *consistent* is significant.  The treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions.").  Generally, the opinion of an examining source is entitled to more weight than the opinion of a non-examining source.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(1).  Indeed, the opinion of a treating or examining source is in no way "dismissible," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it[,]" *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

But even if the ALJ does not afford the treating source opinion controlling weight, the ALJ owes that opinion deference and must weigh that opinion using all the factors provided in 20 C.F.R.

§ 404.1527(c)(1)–(6).  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p, 1996 WL 374188, at *4.  These factors include:

1.  the length of the treatment relationship and the frequency of examination;
2.  the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
3.  the degree to which the physician's opinion is supported by relevant evidence;
4.  consistency between the opinion and the record as a whole;
5.  whether or not the physician is a specialist in the area upon which an opinion is rendered; and
6.  other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted).  Ultimately, the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the treating source opinion and the reasons for that weight.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted); *accord Golden-Schubert v. Commissioner, SSA*, 773 F. App'x 1042, 1050 (10th Cir. 2019) ("An ALJ is not required to expressly discuss each factor in deciding what weight to give a medical opinion.").  This means the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Mestas v. Kijakazi*, No. 20-cv-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

**B.    Application**

Here, the ALJ  found that Plaintiff retains the ability to perform a range of light work, with exertional limitations, including as follows:

> The claimant was able to lift up to 20 pounds occasionally, and was able to lift and carry 10 pounds frequently, but was only able to stand or walk for approximately 4 hours per 8-hour workday, with normal breaks. She would have also required a sit-stand option; that is, she required the option to sit or stand alternatively, at will, in order to accommodate her need to change from a standing position to a sitting position, or vice versa, approximately 1 to 2 times an hour, provided she was not off task more than 5 percent of the work period.

[Doc. 13-15 at 1951]. In making this determination, the ALJ considered the opinions of treating providers Christopher Offutt, DPM ("Dr. Offutt") and Candice Sobel, MD ("Dr. Sobel"), as well as non-examining agency medical consultant Alan Ketelhohn, MD ("Dr. Ketelhohn"). [*Id.* at 1953–54]. The ALJ gave the opinions of Drs. Offutt and Sobel little weight, and the opinion of Dr. Ketelhohn limited weight. [*Id.*].

On appeal, Plaintiff argues that the ALJ failed to base his findings in substantial evidence and to properly consider the opinions of Drs. Offutt, Sobel, and Ketelhohn. [Doc. 14 at 24–32]. The Commissioner disagrees with Plaintiff's positions, arguing that the ALJ reasonably evaluated the opinion evidence. *See* [Doc. 17 at 7–14]. For the reasons stated below, the Court respectfully agrees with the Commissioner. The Court will address each physician in turn.

### 1. Dr. Offutt

***Summary of Relevant Opinions.*** On December 21, 2015, Dr. Offutt completed a Medical Source Statement ("2015 Statement"), wherein he diagnosed Plaintiff with plantar fasciitis and peroneal tendonitis. [Doc. 13-13 at 1586–88]. Dr. Offutt opined that, since 2008, Plaintiff had experienced constant pain while standing and walking, and had the following functional limitations: she could walk one city block without rest or severe pain; stand or walk for 20 minutes at a time before needing to rest; she could sit and stand/walk for a total of two hours each in an eight-hour workday; during a workday, she would need to take breaks to walk every 45 minutes, for ten minutes each time; she would need to take unscheduled rest breaks two to three times per day; and, if she were to work a sedentary job, she would need to elevate her legs two percent of the day. [*Id.* at 1586–87]. In addition, Dr. Offutt indicated that Plaintiff could frequently carry up to ten pounds, occasionally carry up to 20 pounds, and occasionally climb stairs. [*Id.* at 1588].

On August 7, 2018, Dr. Offutt completed a second Medical Source Statement ("2018 Statement"), wherein he opined that Plaintiff has the following functional limitations: she could walk only one-fourth of a city block without rest or severe pain; she could stand or walk for only five minutes at a time before needing to rest, and likewise could only sit or stand/walk for only five minutes during an eight-hour workday; she would require between 50 and 60 unscheduled breaks in a single workday; she could not sit for more than one hour without readjusting "many times"; she would need to elevate her feet 90% of the day if she worked a sedentary job; she could never lift or carry any weight less than ten pounds; and she could never climb stairs or ladders. [Doc. 13-20 at 2307–09]. Dr. Offutt also stated that Plaintiff's symptoms and limitations began in 2013. *See* [*id.* at 2309].

On August 13, 2018, Plaintiff's attorney requested clarification from Dr. Offutt regarding the different onset dates between the 2015 Statement (i.e., 2008) and the 2018 Statement (i.e., 2013). [*Id.* at 2310]. The next day, Dr. Offutt responded that Plaintiff's disability indeed began in 2008, and he explained that the 2015 Statement and 2018 Statement contained different onset dates because Plaintiff had an "extensive charting" history, consisting of two charts, which were "extremely large [with a] significant volume of content." [*Id.* at 2311]. Dr. Offutt stated that Plaintiff's second chart was created in 2013. [*Id.*].

***ALJ's Opinion.*** The ALJ afforded "little weight" to Dr. Offutt's 2015 Statement, on the basis that it was inconsistent with the record evidence. [Doc. 13-15 at 1954]. The ALJ explained, for example, that Dr. Offutt failed to provide any basis for his assertions that Plaintiff could sit, stand, and walk for only two hours in an eight-hour workday, which the ALJ found "troubling" given that Plaintiff was diagnosed with "lower extremity impairments only." [*Id.*]. The ALJ also found that Plaintiff's treatment records through her date last insured, March 31, 2011, "do not

11

reflect significant ongoing complaints or objective clinical findings as to any difficulty with sitting." [*Id.*]. The ALJ also gave little weight to Dr. Offutt's 2018 Statement, finding problematic the fact that it "was issued more than seven years after the date last insured" and claimed that Plaintiff's onset date was in August 2013—more than two years after her date last insured. [*Id.*].

The ALJ likewise gave "little weight" to Dr. Offutt's statements in his clarification letter that he issued on August 14, 2018. [*Id.*]. The ALJ took issue with Dr. Offutt's explanation for the discrepancy as to Plaintiff's alleged onset date:

> The entire length of disability has been confirmed to have begun in 2008 [and] not 2013 for which the discrepancy is due to the patient having 2 charts both extremely large w/ significant volume of content.

[*Id.* (quoting [Doc. 13-20 at 2311])]. The ALJ found that Dr. Offutt's explanation failed to "identify any specific work-related functional limitations and simply concludes that the claimant is disabled, which is a matter reserved to the Commissioner." [*Id.*]. The ALJ also found that "Dr. Offutt's confusion as to the date of onset undercuts the reliability of all of his opinions." [*Id.*].

Relatedly, the ALJ afforded "little weight" to applications that Plaintiff submitted for accessible parking privileges, which were completed in part by Dr. Offutt. [Doc. 13-15 at 1955 (citing [Doc. 13-13 at 1573, 1575, 15801–81, 1583])]. The ALJ explained that "[t]hose forms were issued in connection with a program different from the Social Security Administration's disability program, and they cite no objective findings." [*Id.*]. The ALJ further explained that there was "no evidence that the parking privileges program comports with the evidentiary standards and requirements of the Social Security disability program." [*Id.*].

***Resolution of Issues on Appeal.*** Plaintiff challenges the ALJ's assignment of "little weight" to Dr. Offutt's opinions on several grounds. First, Plaintiff argues that the ALJ failed to properly consider the "consistency" between Dr. Offutt's 2015 and 2018 Statements because Dr. Offutt's clarification letter does not indicate he was "confused" as to the onset date of Plaintiff's

impairments, and, instead, Dr. Offutt "merely made a mistake without checking all of his records." [Doc. 14 at 25–26]. Second, Plaintiff challenges the ALJ's rejection of Dr. Offutt's 2018 Statement based on his assertion that it was issued more than seven years before Plaintiff's date last insured and did not relate back to the relevant period. [*Id.* at 26]. Plaintiff contends that "Dr. Offutt referred back to his treatment of [Plaintiff] beginning in 2008, well before the end of the relevant period in March 2011." [*Id.*]. Plaintiff further contends that "the date on which [Dr. Offutt] issued the [2018 Statement] is irrelevant to its substance," noting that Dr. Offutt "issued a similar opinion in December 2015." [*Id.* (citing [Doc. 13-13 at 1586–88])]. Third, Plaintiff asserts that "[t]he ALJ rejected Dr. Offutt's opinion regarding [Plaintiff's] ability to sit[,] but this is a legitimate limitation based on her foot impairments and edema which require her to elevate her legs." [*Id.* (citing [Doc. 13-13 at 1587])]. Fourth, Plaintiff disagrees with the ALJ's rejection of Plaintiff's applications for accessible parking privileges, arguing that the ALJ should have considered "Dr. Offutt's opinions about her ability to walk," as indicated in the applications. [Doc. 14 at 27]. Plaintiff asserts that it is irrelevant whether she ultimately received the parking permits because "the issue of whether the underlying opinion on her ability to walk is itself valid or entitled to weight." [*Id.*]. Therefore, Plaintiff continues, the ALJ erred by "consider[ing] only the decision, [and] not the underlying evidence." [*Id.*].

In addition, Plaintiff contends that the ALJ failed to properly consider that Dr. Offutt treated Plaintiff regularly since 2008; Dr. Offutt is a specialist; and "his opinion was consistent with that of . . . Dr. Sobel." [*Id.*]. Plaintiff further insists that, in making his RFC finding, the ALJ failed to consider her "multiple severe lower extremity impairments" as "diagnosed by Dr. Offutt and others prior to [Plaintiff's] date last insured," including "bilateral tendonitis, bursitis, edema,

heel spurs, Achilles tendonitis, and foot deformities." [*Id.* at 27–28 (citing [Doc. 13-2 at 126; Doc. 13-7 at 526–30, 590–93])].

The Court finds that the ALJ based his findings in substantial evidence and did not commit reversible error in his consideration of Dr. Offutt's opinions.  First, the ALJ gave "little weight" to Dr. Offutt's 2015 Statement—wherein Dr. Offutt opined that Plaintiff could sit, stand, and walk only about two hours in an eight-hour workday, *see* [Doc. 13-13 at 1587]—on the basis it was inconsistent with the record, and Dr. Offutt "provided no explanation for those limitations." [Doc. 13-15 at 1954].  Plaintiff argues that the ALJ should have afforded this opinion greater weight because her sitting restrictions constitute "a legitimate limitation based on her foot impairments and edema which require her to elevate her legs."  [Doc. 14 at 26].  At Step Four, Plaintiff bears the burden of proof.  *Neilson*, 992 F.2d at 1120.  Notably, however, Plaintiff fails to cite any record evidence from the relevant period through her date last insured that the ALJ failed to consider in rejecting Dr. Offutt's opinion, let alone evidence demonstrating that she was indeed so limited. *See* [Doc. 14 at 26]; *see also* [Doc. 17 at 7–8]; *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments").

Second, Plaintiff's argument that the ALJ failed to properly consider the alleged consistencies between Dr. Offutt's 2015 Statement and 2018 Statement—as well as the corresponding clarification letter regarding the different onset dates stated in those documents— lacks basis.  Specifically, Plaintiff challenges the ALJ's assertion that Dr. Offutt's clarification letter "does not identify any specific work-related functional limitations," [Doc. 13-15 at 1954], on the grounds that "Dr. Offutt obviously was merely amending the original [2015] opinion which did contain those functional limitations."  [Doc. 14 at 25]; *see also* [*id.* at 26 ("Dr. Offutt referred

back to his treatment of Ms. Contreras beginning in 2008, well before the end of the relevant period in March 2011; the date on which he issued the report is irrelevant to its substance, and he issued a similar opinion in December 2015.")].

However, as noted above, Plaintiff fails to point to any record evidence from the relevant period that the ALJ failed to consider in affording little weight to Dr. Offutt's 2015 Statement. Similarly, here, Plaintiff also fails to point to any evidence that the ALJ should have considered, but did not, in granting little weight to Dr. Offutt's 2018 Statement—despite her contention that Dr. Offutt's opinions as to her specific limitations were "based on . . . his long and regular treatment of [Plaintiff's] significant and severe problems with her feet." [Doc. 14 at 26]. Further, Plaintiff does not dispute the ALJ's conclusion that her treatment records from her alleged onset date(s) "through the date last insured do not reflect significant ongoing complaints or objective clinical findings as to any difficulty with sitting." [Doc. 13-15 at 1954]. Thus, insofar as the 2015 and 2018 Statements identify similar functional limitations, as Plaintiff claims, *see* [*id.* at 26], Plaintiff fails to cite any underlying medical evidence to support her argument that the ALJ should have afforded more weight to Dr. Offutt's opinions in either of those documents.

Finally, of the six factors that an ALJ must consider when weighing medical opinions under 20 C.F.R. § 404.1527(c), Plaintiff claims that the ALJ here failed to consider the following: (1) that Dr. Offutt treated Plaintiff regularly since 2008; (2) that he is a specialist; and (3) "that his opinion was consistent with that of the other treatment provider, Dr. Sobel." [Doc. 14 at 27]. However, again, Plaintiff fails to identify any record evidence from Dr. Offutt (or anyone else) *during the relevant period through the date last insured* that noted severe lower extremity impairments and related functional limitations that she claims the ALJ failed to consider in affording Dr. Offutt's opinions little weight. Thus, the Court is not persuaded that the ALJ

committed harmful error by affording little weight to Dr. Offutt's essentially ex post facto opinions for which he did not provide any underlying support.  And, with respect to the alleged consistency between the opinions of Dr. Offutt and Dr. Sobel, as explained in greater detail below, the ALJ also found that Dr. Sobel's opinions to be inconsistent with the evidence during the relevant period through the date last insured.  *See* [Doc. 13-15 at 1953].[5]

Accordingly, the Court concludes that the ALJ did not err in his evaluation of Dr. Offutt's opinions.  *See McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" (quotation omitted)); *Oldham*, 509 F.3d at 1258 (explaining that the court will uphold an ALJ's weighing of the medical opinion evidence if he makes clear his reasons for assigning the weight he does).

---

[5] Plaintiff also asserts that "[i]f an opinion can be rejected merely because it was issued on a date outside the relevant period at issue, then the ALJ should have also rejected the opinion of the medical expert who testified in 2020."  [Doc. 14 at 26 n.10].  She insists that the ALJ's affording the 2020 testimony "significant" weight is inconsistent and "further indication of the ALJ's failure to base his findings in substantial evidence and to cite good reasons for the weight given to these opinions."  [*Id.*].  First, this argument is irrelevant, given that the medical consultant Plaintiff is referencing, Michael Enright, PhD ("Dr. Enright"), was not commenting on Plaintiff's physical conditions, which are at issue in this case, and instead opined regarding Plaintiff's mental conditions.  *See* [Doc. 13-15 at 1950; Doc. 13-20 at 2557–2572].  In any event, apart from the above-referenced comments, Plaintiff does not present any legitimate challenge to the ALJ's treatment of Dr. Enright's opinions.   Second, the ALJ did not afford Dr. Offutt's opinions little weight "merely because [they were] issued on a date outside the relevant period at issue," as Plaintiff claims.  [Doc. 14 at 26 n.10].  As the ALJ explained, in addition to being issued outside the relevant period, Dr. Offutt's opinions were inconsistent with the record, including that he "provided no explanation for [the] limitations" he identified in the 2015 Statement and, by extension, the 2018 Statement.  [Doc. 13-15 at 1954].

### 2.   Dr. Sobel

***Summary of Relevant Opinions.***  On February 14, 2011, Plaintiff visited Dr. Sobel with a chief complaint of knee pain.  [Doc. 13-7 at 346].  At that appointment, Dr. Sobel noted that Plaintiff "still ha[d] vertigo and also some visual disturbance."  [*Id.*].

On July 18, 2011, shortly after Plaintiff's date last insured, Dr. Sobel signed a letter stating that she had been Plaintiff's primary care provider since May 2009.  [*Id.* at 595].  Dr. Sobel stated that Plaintiff was diagnosed with "incapacitating" vertigo and anxiety, and that Plaintiff "continue[d] to have exacerbations of the vertigo despite medications and vestibular rehabilitation," during which "she is unable to perform any job duties and in fact is unable to maintain an upright position."  [*Id.*].  Dr. Sobel further explained that "[t]he exacerbations occur without any warning and can last for days," and Plaintiff first complained about these issues on June 17, 2010.  [*Id.*].  "Since this has not resolved with medical management," she continued, "it may be a lifelong condition."  [*Id.*].

Dr. Sobel also completed a functional capacity questionnaire around the same time, signed July 13, 2011.  *See* [*id.* at 596–600].  Therein, she opined that when Plaintiff's vertigo flares, she becomes "too dizzy to walk or stand and sometimes even to sit."  [*Id.* at 596].  Dr. Sobel also stated that Plaintiff's functional limitations included that she could occasionally carry up to 20 pounds; Plaintiff had balance problems that were frequently present; she is "totally restricted" in her ability to climb stairs due to her vertigo; and she could occasionally bend, squat, and stoop.  [*Id.* at 597].  Dr. Sobel further opined that she did not expect Plaintiff's vertigo to improve, noting that Plaintiff had not responded well to medication or vestibular rehabilitations, and Plaintiff was incapable of performing full time sedentary work.  [*Id.* at 599–600].

***ALJ's Opinion.***  The ALJ gave "little weight" to Dr. Sobel's July 2011 letter on the grounds that her opinions in that letter were issued after Plaintiff's date last insured and were inconsistent with the evidence during the relevant period through the date last insured.  [Doc. 13-15 at 1953]. With respect to Plaintiff's vertigo, the ALJ stated that, although records noted that Plaintiff complained of vertigo beginning in March 2010, and worsening in June 2010, Plaintiff "was noted to have improved significantly" by November that same year.  [*Id.* (citing [Doc. 13-7 at 329])]. The ALJ also found that "[l]ater records note[d] some vague reports of vertigo, but no specific functional limitations were noted."  [*Id.* (citing [Doc. 13-7 at 346])].

The ALJ also afforded "little weight" to Dr. Sobel's functional capacity questionnaire.  [*Id.* at 1954].  The ALJ characterized the questionnaire as a "check-box opinion," and found that Dr. Sobel's opinions therein "cite[d] no objective basis for the limitations assessed, and it [was] not consistent with the overall record."  [*Id.*].  And, although Dr. Sobel stated that Plaintiff's vertigo had not responded well to treatment, the ALJ reiterated that Plaintiff's records "note[d] significant improvement in [Plaintiff's] vertigo symptoms by November 2010, and later records through the date last insured note only a vague report that [Plaintiff] was still experiencing vertigo."  [*Id.* (citations omitted)].

***Resolution of Issues on Appeal.***  Plaintiff argues that even though the ALJ found at Step Two that Plaintiff's vertigo was not a severe impairment, the ALJ failed to properly consider the vertigo at all in his RFC finding at Step Four.  [Doc. 14 at 28–29].  Specifically, Plaintiff contends that, in finding that her vertigo had improved by November 2010, the ALJ "fail[ed] to acknowledge that this 'improvement' was not sustained."  [*Id.* at 29].  Plaintiff similarly insists that the ALJ's assertion that the record contains "vague" complaints of vertigo after November 2010 "is contrary to" records from November 2010 and February 2011.  [*Id.* at 29–30].

In addition, Plaintiff asserts it was improper for the ALJ to reject Dr. Sobel's opinion "because it was issued after the date last insured (March 31, 2011)." [*Id.* at 30]. Plaintiff argues that "the date on which it was issued is not relevant given that the opinion covers the time period at issue" for her application for DIB. [*Id.*]. For support, Plaintiff points to Dr. Sobel's July 2011 letter, wherein Dr. Sobel noted that she had been treating Plaintiff since 2009, "and specifically stated that her significant vertigo complaints started in June 2010, opining that it could end up being a 'lifelong condition.'" [*Id.* (citing [Doc. 13-7 at 595])]. Plaintiff also contends that Dr. Sobel's July 2011 opinion "was issued . . . only a few months after the date last insured in March 2011, which is not a significant period of time." [*Id.*]. Plaintiff further argues that the ALJ should not have rejected Dr. Sobel's July 2011 functional capacity questionnaire, arguing that "Dr. Sobel explained her answers on the form, and her opinion is accompanied by copious records from her clinic." [*Id.*]. Moreover, Plaintiff contends that the ALJ should have afforded Dr. Sobel's opinion "controlling weight," and "the ALJ failed to consider that Dr. Sobel was a long-term treating source, and that her opinion was consistent with both Dr. Offutt's opinion and the evidence." [*Id.* at 30–31].[6]

In response, the Commissioner argues that the Court previously "found in 2015 that the ALJ in 2012 properly determined Dr. Sobel's opinion was not supported by or consistent with the evidence" and, therefore, this Court should apply the doctrine of collateral estoppel and decline Plaintiff the opportunity to relitigate this issue. [Doc. 17 at 12]. Plaintiff disagrees, countering

---

[6] The Commissioner argues that the Court previously "found in 2015 that the ALJ in 2012 properly determined Dr. Sobel's opinion was not supported by or consistent with the evidence" and, therefore, this Court should apply the doctrine of collateral estoppel and decline Plaintiff the opportunity to relitigate this issue. [Doc. 17 at 12]. Plaintiff counters that the Commissioner "cannot take advantage of that doctrine because she voluntarily waived it when her own Appels council ordered that Dr. Sobel's opinion be reevaluated." [Doc. 18 at 6].

that the Commissioner "cannot take advantage of that doctrine because she voluntarily waived it when her own Appeals Council ordered that Dr. Sobel's opinion be reevaluated." [Doc. 18 at 6].

The Court agrees with Defendant, and finds that Plaintiff's attempt to relitigate the ALJ's consideration of Dr. Sobel's opinion is barred by collateral estoppel. Collateral estoppel, also known as issue preclusion, applies when (1) identical issue was presented in prior action; (2) prior action was decided on merits; (3) party opposing imposition of collateral estoppel was party in prior action; and (4) that party had full and fair opportunity to litigate issue in prior action. *See United States v. Rogers,* 960 F.2d 1501, 1508 (10th Cir. 1992). All of these elements are present here. Indeed, in the Court's prior order remanding this matter on March 30, 2015, Magistrate Judge Kathleen Tafoya specifically addressed whether the ALJ had erred in discounting Dr. Sobel's opinions regarding Plaintiff's vertigo. *See* [Doc. 13-9 at 793–97]. And Plaintiff does not argue that the prior ALJ addressed different facts than the ALJ in the decision at issue in this appeal. *See* [Doc. 18 at 6–7].

Further, Plaintiff fails to cite any support for her assertion that the Commissioner "voluntarily waived" the defense of collateral estoppel because the "Appeals Council ordered that Dr. Sobel's opinion be reevaluated." [Doc. 18 at 6]. In any event, Plaintiff's argument in this regard is factually erroneous. The Appeals Council order that Plaintiff references in her Reply, dated January 10, 2020, *see* [Doc. 18 at 6 (citing [Doc. 13-16 at 2054])], was not based on Judge Tafoya's March 2015 remand. Rather, it was based on the order for remand by District Judge Robert Blackburn, dated June 24, 2019, *see* [Doc. 13-16 at 2044–45, 2054], which Plaintiff acknowledges was the result of the Commissioner's *voluntary* request for remand, *see* [Doc. 14 at 4]. Thus, the Court finds that the doctrine of collateral estoppel applies with respect to the Court's consideration of Dr. Sobel's opinions. *See Frost, II ex rel. Frost v. Astrue*, 627 F. Supp. 2d 1216,

1223–24 (D. Kan. 2008) ("Because the doctrine of issue preclusion applies here, neither the Commissioner in the final decision at issue, this court, nor the Commissioner in future proceedings may assert a finding contrary to those findings *necessarily decided* by the prior court's decision, unless there is an intervening change in legal conditions.").

Moreover, even if collateral estoppel did not apply, the Court finds that the ALJ based his findings in substantial evidence and did not commit reversible error in his evaluation of Dr. Sobel's opinions.  The record evidence shows that, on September 2, 2010 (i.e., during the relevant period before Plaintiff's date last insured), and at the request of Dr. Sobel, Plaintiff attended a consultation with Patrick Sternberg, MD ("Dr. Sternberg").  [Doc. 13-7 at 627].  Dr. Sternberg noted that Plaintiff had "been bothered by vertigo" since March 2010, which worsened in June 2010, but "there [was] a gradual improvement in symptoms" and "the actual spinning vertigo is clearly on the mend."  [*Id.*].  Dr. Sternberg also noted that Plaintiff had "been diagnosed as having benign paroxysmal positional vertigo (BPPV)," explaining further that "[i]t is called 'benign' because virtually everybody is over this illness within a couple of years, and between onset and the end, patients just gradually get better."  [*Id.* at 629].  Dr. Sternberg believed Plaintiff was trending towards improvement, and therefore did "not believe further workup [was] required."  [*Id.*].  Thereafter, on November 2, 2010, Plaintiff attended a consultation with Robert McLean, MD-PhD ("Dr. McLean"), where Dr. McLean noted that Plaintiff had "nystagmus in head down and left position," which he found was "suggestive of" benign paroxysmal positional vertigo.  [*Id.* at 329].  However, Dr. McLean also noted that Plaintiff "ha[d] improved significantly."  [*Id.*].  The ALJ relied upon records from both of these appointments—which, again, occurred during the relevant period at issue—in rejecting Dr. Sobel's July 2011 opinions as inconsistent with the other record evidence.  *See* [Doc. 13-15 at 1953].

Plaintiff also challenges the ALJ's assertion that there were "vague" records related to Plaintiff's vertigo "*after* November 2010." [Doc. 14 at 29 (emphasis added)]. For support, however, Plaintiff points to records *from* her November 2010 appointment with Dr. McLean, arguing that Dr. McLean "found objective signs of vertigo including transient nystagmus on the left which he opined indicated she had benign positional vertigo." [*Id.* at 29 (citing [Doc. 13-7 at 328–29])]. Plaintiff also points to records from her February 2011 appointment with Dr. Sobel, where Plaintiff complained that "she continued to have vertigo and visual disturbances." [*Id.*].

However, the ALJ considered the records from Plaintiff's appointment with Dr. McLean, explaining that "by November 2010, the claimant had improved significantly." [Doc. 13-15 at 1953]. This assertion by the ALJ is consistent with the record. *Compare* [*id.*] *with* [Doc. 13-7 at 329 ("Patient has improved significantly.")]. The ALJ also considered Plaintiff's records from her February 2011 appointment with Dr. Sobel, noting that those records contained "some vague reports of vertigo, but no specific functional limitations were recommended." *See* [Doc. 13-15 at 1953 (citing [Doc. 13-7 at 346])]. Again, the ALJ's finding is consistent with the record. At the February 2011 appointment, the reason for which was Plaintiff's complaints of knee pain, Dr. Sobel noted only that Plaintiff "still ha[d] vertigo and also some visual disturbance," [Doc. 13-7 at 346], which Plaintiff acknowledges in her brief, *see* [Doc. 14 at 29 (arguing she "told Dr. Sobel she continued to have vertigo and visual disturbances")]. Nevertheless, Plaintiff does not dispute the ALJ's conclusion that "no specific functional limitations were recommended" in this record. *See* [Doc. 13-15 at 1953]. And despite Plaintiff's disagreement with the ALJ's use of the term "vague" when referring to Plaintiff's reports of vertigo at her February 2011 appointment, Plaintiff fails to cite any other evidence to support her position that after November 2010 and before her

date last insured, she made complaints of vertigo that were "specific, and indicate[d] that her vertigo continued to be severe." [Doc. 14 at 30].[7]

In sum, the Court does not find that the ALJ committed reversible error in his assessment of Dr. Sobel's opinions.

### 3.    Dr. Ketelhohn

***Summary of Relevant Opinions.***   In a RFC assessment dated March 28, 2011, non-treating examiner Dr. Ketelhohn opined that Plaintiff could occasionally lift and/or carry up to ten pounds; sit, stand and/or walk for a total of about six hours in an eight-hour workday; and occasionally climb, stoop, kneel, and crouch.  [Doc. 13-3 at 180–82].  Dr. Ketelhohn stated that he assessed Plaintiff's exertional and postural limitations based upon her complaints of foot pain, and he noted Plaintiff's diagnosis of plantar fasciitis, but also noted that Plaintiff was "using orthotics" and had a "normal gait and station" seven months after heel surgery.  [*Id.* at 182].  He further noted that Plaintiff's daily living activities "indicate[d] the ability to carry a broad array of activities, albeit with increases in duration and decreases in intensity."  [*Id.*].

***ALJ's Opinion.***   The ALJ gave "limited weight" to Dr. Ketelhohn's opinion on the basis that "[t]he evidence as a whole is not consistent with a finding that [Plaintiff] was limited to lifting or carrying 10 pounds occasionally and less than 10 pounds frequently."  [Doc. 13-15 at 1953].  The ALJ  explained that there was a "dearth" of records showing findings of decreased strength during the period from Plaintiff's date of onset through the date last insured, and noted that "findings a few months after the date last insured note[d] normal strength and motor findings."

---

[7] Indeed, although Plaintiff asserts that Dr. Sobel's opinion "is accompanied by copious office records from her clinic," [Doc. 14 at 30], Plaintiff fails to cite any such records which she claims the ALJ failed to consider in granting little weight to Dr. Sobel's opinions, *see* [*id.*].

[*Id.* (citing [Doc. 13-7 at 543, 574])].  The ALJ further stated that, although "[t]he record notes some complaints of foot pain," it also "note[d] normal gait, with no indication in the treatment records of a need to restrict the claimant to lifting or carrying below the light exertional level." [*Id.* (citing [Doc. 13-7 at 329, 333, 338, 607])].  Nevertheless, the ALJ also found Plaintiff to be "*more* limited as to standing and walking than did" Dr. Ketelhohn, noting that his RFC finding "limited [Plaintiff] to standing or walking a total of four hours in an eight-hour workday, as well as including a sit/stand option in [Plaintiff's] residual functional capacity, due to lower extremity symptomatology."  [*Id.* (emphasis added)].  Likewise, the ALJ found Plaintiff to be "more limited posturally and environmentally than did [Dr. Ketelhohn], due to Plaintiff's combination of impairments, including her nonsevere medically determinable impairments."  [*Id.*].

   ***Resolution of Issues on Appeal.***  Plaintiff challenges the ALJ's assignment of "limited weight" to Dr. Ketelhohn's opinion regarding Plaintiff's ability to lift and carry up to ten pounds, as well as the ALJ's reference to findings of Plaintiff's "normal gait" during the relevant period. [Doc. 14 at 31–32].  Specifically, Plaintiff argues that Dr. Ketelhohn had already accounted for Plaintiff's "normal gait" in his findings, and yet he still limited Plaintiff to lifting and carrying only up to ten pounds, which Plaintiff contends was not based on "any strength limitation," but, instead, "was 'based upon [Plaintiff's] foot pain allegations.'"  [*Id.* (citing [Doc. 13-3 at 181])].  Plaintiff states that the ALJ should not have "substitute[d] his lay opinion for that of a medical expert."  [*Id.* at 32].

   As with Drs. Offutt and Sobel, the Court finds here that the ALJ based his findings in substantial evidence and did not commit reversible error in his evaluation of Dr. Ketelhohn's opinion.  As mentioned, the ALJ noted there was a "dearth of findings of decreased strength" during the relevant period, [Doc. 13-15 at 1953], and records "a few months after the date last

insured note[d] normal strength and motor findings," [*id.* (citing [Doc. 13-7 at 543, 574])].

Although Plaintiff argues that Dr. Ketelhohn's opinion limiting Plaintiff to occasionally lifting and

carrying up to ten pounds was based upon her complaints of foot pain as opposed to "any strength

limitation," [Doc. 14 at 31–32], Plaintiff does not dispute the ALJ's basis for rejecting Dr.

Ketelhohn's opinion on this issue (i.e., the "dearth" of supporting evidence).  Notably, Plaintiff

once again fails to identify any evidence that the ALJ failed to consider regarding her lifting and

carrying limitations during the relevant period through the date last insured, let alone claim that

the record supports a finding that she is, in fact, so limited in her ability to lift or carry.  *See* [*id.* at

32 (arguing that "*if*, in fact, [Plaintiff] is limited to lifting more than 10 pounds . . ." (emphasis

added))].[8]

In sum, the Court finds that the ALJ did not commit reversible error in his assessment of

Dr. Ketelhohn's opinion.

## II.   Plaintiff's Second Challenge: Whether the ALJ Committed Harmful Error When He Failed to Make Specific Findings, Linked to Substantial Evidence, to Justify His Conclusion that Plaintiff's Statements Regarding Her Symptoms Were "Not Entirely Consistent" with the Rest of the Evidence of Record, in Violation of SSR 16-3p.

### A.   Legal Standard

Under SSR 16-3p, the ALJ is required to

explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

---

[8] Plaintiff also argues that "[t]he substantive remand from this Court in 2015 found [Dr. Ketelhohn's] opinion to be 'likely probative' and remanded because the first ALJ had failed to consider it." [Doc. 14 at 31].  However, the prior remand was based on a different ALJ's decision that is not before this Court.  It is likewise irrelevant whether the Court previously found Dr. Ketelhohn's opinion to be "likely probative."

2017 WL 5180304, at *8 (Oct. 25, 2017).  In evaluating a claimant's symptoms, it is not enough

for an ALJ "to make a single, conclusory statement that 'the individual's statements about his or

her symptoms have been considered' or that 'the statements about the individual's symptoms are

(or are not) supported or consistent.'"  *Id.* at *10.  Rather, "[t]he determination or decision must

contain specific reasons for the weight given to the individual's symptoms, be consistent with and

supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer

can assess how the adjudicator evaluated the individual's symptoms."  *Id.*; *see also Kepler v.*

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Findings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.").

Under this rubric, 20 C.F.R. § 404.1529(c)(4) provides the ALJ a framework in evaluating

a claimant's own statements concerning her symptoms:

> We will consider your statements about the intensity, persistence, and limiting
> effects of your symptoms, and we will evaluate your statements in relation to the
> objective medical evidence and other evidence, in reaching a conclusion as to
> whether you are disabled. *We will consider whether there are any inconsistencies
> in the evidence and the extent to which there are any conflicts between your
> statements and the rest of the evidence*, including your history, the signs and
> laboratory findings, and statements by your medical sources or other persons about
> how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added); *see also* SSR 16-3p, 2017 WL 5180304, at *6 ("We

will consider an individual's statements about the intensity, persistence, and limiting effects of

symptoms, and we will evaluate whether the statements are consistent with objective medical

evidence and the other evidence.").  If the claimant's statements regarding the intensity,

persistence, and limiting effects of her symptoms "are inconsistent with the objective medical

evidence and the other evidence, the ALJ must evaluate whether the claimant's "symptoms are

less likely to reduce . . . her capacities to perform work-related activities or abilities to function

independently, appropriately, and effectively in an age-appropriate manner." *Id.* at *8; *Luthy v. Saul*, No. 17-cv-2206-PAB, 2020 WL 6938300, at *6 (D. Colo. Nov. 25, 2020) (same).

When analyzing a claimant's evidence of pain, courts must consider (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling ("*Luna* factors"). *See Wilson v. Astrue*, 602 F.3d 1136, 1144–45 (10th Cir. 2010) (explaining that these factors are drawn from the Tenth Circuit's opinion in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)). Further, in determining whether a claimant's subjective complaints of pain are credible, the regulations provide that an ALJ may consider the following factors:

(i)     daily activities;

(ii)    the location, duration, frequency, and intensity of pain or other symptoms;

(iii)   precipitating and aggravating factors;

(iv)    the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(v)     treatment, other than medication, received for relief of pain or other symptoms;

(vi)    any measures used to relieve pain or other symptoms; and

(vii)   other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Nevertheless, this Court is guided by the principle that "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler*, 68 F.3d at 391 (internal quotation and citation

omitted).  "Inconsistencies are a reasonable basis upon which to find a claimant not credible."

*Marchand v. Colvin*, No. 14-cv-02533-RM, 2016 WL 1089740, at *8 (D. Colo. Mar. 21, 2016)

(citing *Wilson*, 602 F.3d at 1146).  So long as the ALJ sets forth the specific evidence he relies

upon in evaluating the consistency of the claimant's subjective complaints with other evidence,

the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'"  *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel,* 206 F.3d 1368,

1372 (10th Cir. 2000)).  "[C]ommon sense, not technical perfection, is [the reviewing court's]

guide."  *Id.*

###     B.     Application

As mentioned above, the ALJ concluded that Plaintiff has the RFC to perform a range of

light work with various functional limitations.  *See* [Doc. 13-15 at 1951–52].  In reaching his

conclusions, the ALJ found Plaintiff's statements "concerning the intensity, persistence and

limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and

other evidence in the record."  [*Id.* at 1952].

On appeal, Plaintiff argues that the ALJ "failed to articulate any findings at all that are

linked to any specific inconsistency between [Plaintiff's] statements and the medical evidence."

[Doc. 14 at 33].  Plaintiff contends that this omission constitutes "harmful, reversible error,

because if [Plaintiff's] limitations were as she stated they were during the period at issue, she was

limited to no more than sedentary work and a finding of disability is required."  [*Id.* at 33–34].

Plaintiff seeks remand so the ALJ can "clearly articulate specific reasons for his findings"

regarding "what factors and what evidence led the ALJ to conclude that [Plaintiff's] statements

regarding her limitations were 'not entirely consistent.'" [Doc. 14 at 33].  Plaintiff further contends

that "the Court should assume" there is no explanation for the ALJ's findings regarding Plaintiff's

"consistency," and therefore it should "accept [Plaintiff's] testimony as consistent with the medical evidence of record, particularly the opinions of her treating doctors, Drs. Sobel and Offutt." [*Id.* at 34]. The Commissioner responds that the ALJ "considered Plaintiff's subjective descriptions of her symptoms" as part of his analysis of Plaintiff's RFC. [Doc. 17 at 14].

At the outset, the Court notes that Plaintiff's complaint of error is not entirely clear. Indeed, Plaintiff fails to precisely identify any relevant testimony or other statements regarding her symptoms that the ALJ should have considered. *See* [Doc. 14 at 33–34]; *see also United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) (explaining that it is not the court's role to craft arguments for litigants, especially when represented by able counsel); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Nevertheless, the Court agrees with Plaintiff that the ALJ failed to provide an adequate explanation or support for his conclusion that Plaintiff's statements regarding her symptoms were inconsistent with the evidence in the record. The ALJ did not cite "specific reasons for the weight given to [Plaintiff's] symptoms" or support the weight given with citations to the evidence. SSR 16-3p, 2017 WL 5180304, at *8. Indeed, although the Commissioner argues in her response that the ALJ "considered Plaintiff's subjective descriptions of her symptoms" as part of his analysis of Plaintiff's RFC, [Doc. 17 at 14], the Commissioner fails to point to any of Plaintiff's statements regarding the "subjective descriptions of her symptoms" that the ALJ addressed in his decision, *see* [*id.* at 14–16], and the Court likewise cannot find any, *see* [Doc. 13-15 at 1951–55].

Further, the only indication of the ALJ's consideration of *any* of Plaintiff's statements regarding her pain symptoms is his statement that "in April 2011, just after the date last insured, *the claimant reported pain [in] her feet*, but gait was otherwise unremarkable." [Doc. 13-15 at 1952 (emphasis added) (citing [Doc. 13-7 at 607])]; *see also* [*id.* at 1953 ("The record notes some complaints of foot pain, but also note[s] normal gait.")]. Notably, the April 2011 record referenced by the ALJ also states that:

> Patient reported that over the past 6 mo. She has been experiencing global L knee pain that is aching. She states that the knee pain is not improving or worsening. She reported that at rest her pain is 5/10 and is an 8/10 when transitioning from sitting to standing, squatting. She reports that sitting, ice and Aleve make her knee less painful. She has difficulty walking long distances and is currently only able to walk for half a block.

[Doc. 13-7 at 607]. The ALJ fails to address these statements in his decision, despite his reliance on Plaintiff's complaints of feet pain in this record in support of his RFC findings. *See* [Doc. 13-15 at 1952]. In addition, at the hearing, Plaintiff testified that during the relevant period, when she was cooking, she had "difficulty standing for a long period of time" because her feet and knees would hurt, and she would get dizzy, and "would need breaks to sit down." [*Id.* at 1994].[9] Further, in addressing Plaintiff's daily living activities at the hearing, the ALJ, Plaintiff, and her counsel referred to statements that Plaintiff made in a Function Report that she completed in February 2011—one month *before* her date last insured. *Compare* [Doc. 13-15 at 1986–87, 1993 (Plaintiff's counsel's reference to "the form that you filled out in February of 2011")] *with* [Doc. 13-6 at 265–

---

[9] In addressing Plaintiff's daily living activities at the hearing, the ALJ, Plaintiff, and her counsel referred to statements that Plaintiff made in a Function Report that she completed in February 2011—one month before her date last insured. *Compare* [Doc. 13-15 at 1986–87, 1993 (Plaintiff's counsel's reference to "the form that you filled out in February of 2011")] *with* [Doc. 13-6 at 265–72]. In that document, Plaintiff also stated, *inter alia*, that she "walk[s] slowly because of severe pain on [her] feet and legs." [Doc. 13-6 at 266].

72].  In that document, Plaintiff also stated, *inter alia*, that she "walk[s] slowly because of severe pain on [her] feet and legs."  [Doc. 13-6 at 266].

Thus, "[b]ecause the record contained some objective evidence of an impairment capable of producing the type of pain of which Plaintiff complained, the ALJ was required to consider whether Plaintiff's impairments were in fact disabling, based on all of the evidence of record, both objective and subjective."  *Hoskins v. Saul*, No. 19-cv-03685-KMT, 2021 WL 973392, at *5 (D. Colo. Mar. 16, 2021) (citing *Luna*, 834 F.2d at 163–64).  "In doing so, the ALJ was obligated to consider all relevant *Luna* factors."  *Id.* (citing *Keyes-Zachary*, 695 F.3d at 1167).  "Only at this point may the decision maker decide whether he believes the claimant's assertions of severe pain."  *Luna*, 834 F.2d at 163.

In addition, despite the ALJ's discussion of Plaintiff's treatment history, *see* [Doc. 13-15 at 1952–55], "nowhere in his decision does the ALJ discuss exactly *how*, and to what extent, he found Plaintiff's [testimony] to be inconsistent with the objective medical evidence," and "it is unclear from the ALJ's decision what portions of Plaintiff's testimony that he deemed believable, and what portions of the testimony that he did not."  *Hoskins*, 2021 WL 973392, at *6; *cf. Keyes-Zachary*, 695 F.3d at 1169 (finding no reversible error, based on the ALJ's alleged failure to explain what portions of the plaintiff's testimony that he found not credible, where the ALJ "listed many of [the plaintiff's] specific factual assertions, often following them by a qualifying statement to indicate where he believed her testimony was contradicted or limited by other evidence in the record"); *Kepler*, 68 F.3d at 391 ("Here, the link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion."); *Bennett v. Saul*, No. 15-cv-02309-KLM, 2020 WL 353101, at *13–14 (D. Colo. Jan. 17, 2020) (holding that an ALJ's credibility determination was not supported by substantial evidence, where the ALJ "gave largely boilerplate

reasons for rejecting [the claimant]'s complaints of pain and did not link her conclusions to the evidence").

Likewise, it is unclear from the ALJ's decision whether, in assessing Plaintiff's credibility, the ALJ considered any of the *Luna* factors.  *See Siegle v. Barnhart*, 377 F. Supp. 2d 932, 944 (D. Colo. 2005) (holding that an ALJ failed to "closely and affirmatively" link his credibility finding to "substantial evidence," where the ALJ "briefly describe[d]" the plaintiff's daily activities, but did not "indicate if and how these daily activities [were] inconsistent with [the plaintiff's] allegations," and where the ALJ made reference to "inconsistent complaints" in the treatment records, "but provide[d] no details or citations to the record").  And, as mentioned above, the ALJ did not address Plaintiff's testimony that, due to pain in her feet and knees, she had "difficulty standing for a long period of time" and "would need breaks to sit down." [Doc. 13-15 at 1994].

Accordingly, on this record, the Court finds that the ALJ did not properly assess Plaintiff's credibility insofar as he failed to provide adequate reasons for his findings, and because he did not closely and affirmatively link his conclusions to the evidence.  Because it is unclear whether or not this error was harmless, this matter must be reversed and remanded.[10]  *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008*)* (finding that the ALJ's purported pain analysis was "improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how [the plaintiff's] repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication"); *Hayden v.*

---

[10] In remanding on this issue, this Order should not be read as stating that the ALJ was wrong in determining that Plaintiff's subjective complaints of pain lack support in the record.  Rather, the Court is stating that the ALJ did not properly articulate his findings on this issue, as required by the regulations.

*Barnhart*, 374 F.3d 986, 992–94 (10th Cir. 2004) (finding that the ALJ committed reversible error, when he failed to address the plaintiff's claims of disabling headaches in his decision, and where the claims were not inconsistent with the objective medical evidence); *Kepler*, 68 F.3d at 391 (although "the ALJ listed some of these [*Luna*] factors, he did not explain why the specific evidence relevant to each factor led him to conclude [the] claimant's subjective complaints were not credible").

In addition, although this case has been on appeal a number of times, this Court declines Plaintiff's invitation to determine that she is entitled to disability benefits. *See* [Doc. 14 at 34]. On remand, however, the ALJ should conduct a proper *Luna*-based analysis, and articulate findings that are closely and affirmatively linked to substantial evidence. In so ruling, this Court expressly does not pass on the substantive question of whether, once such analysis is performed and articulated, Plaintiff is entitled to a different RFC or ultimately, disability benefits.

### III.    Plaintiff's Third Challenge: Whether the ALJ Committed Error When He Failed to Find Plaintiff Disabled at Step Five under the Medical Vocational Guidelines (i.e., the Grid Rules).

As to Plaintiff's third challenge on appeal, *see* [Doc. 14 at 36–37], because the Court has determined that remand is warranted based on the ALJ's failure to sufficiently explain his evaluation of Plaintiff's credibility as to her subjective statements regarding her symptoms, "there is no need to address [Plaintiff's] other arguments at this time." *Hoskins*, 2021 WL 973392, at *7; *see also Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) ("The ALJ's failure to develop the record affected the disability analysis as a whole and we therefore do not address the other issues [the plaintiff] raises on appeal.").

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

1.      The Commissioner's final decision is **REVERSED** and **REMANDED** for further

administrative proceedings consistent with this Order; and

2.      Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and

D.C.COLO. LCivR 54.1.


DATED:  September 30, 2022                      BY THE COURT:

                                                _____
                                                Nina Y. Wang
                                                United States District Judge